USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _09/29/2020___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

WEI SU and HAI JUAN WANG,                                          :
                                                                   :
                              Plaintiffs,                          :
                                                                   :
                      -against-                                    :
                                                                   :
SOTHEBY'S, INC.,                                                   :
                                                                   :
                              Defendant.                           :
------------------------------------------------------------------- :
SOTHEBY'S, INC.,                                                   :
                                                                   :
                              Counter-Claimant,                    :
                                                                   :
                      -against-                                    :
                                                                   :
WEI SU, HAI JUAN WANG, and YEH YAO HWANG,                          :
                                                                   :
                              Counterclaim-Defendants,             :        17-CV-4577 (VEC)
                                                                   :
------------------------------------------------------------------- :        MEMORANDUM OPINION
YEH YAO HWANG,                                                     :             AND ORDER
                                                                   :
                              Cross-Claimant,                      :
                                                                   :
                      -against-                                    :
                                                                   :
WEI SU and HAI JUAN WANG,                                          :
                                                                   :
                              Cross-Defendants,                    :
------------------------------------------------------------------- :
WEI SU and HAI JUAN WANG,                                          :
                                                                   :
                              Cross-Claimants,                     :
                                                                   :
                      -against-                                    :
                                                                   :
YEH YAO HWANG,                                                     :
                                                                   :
                              Cross-Defendant,                     :
------------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Two parties dispute the ownership of an ancient Chinese ritual wine vessel, the Zhou Zha Hu ("Vessel"), which is from the Middle Western Zhou Dynasty, around the 10th to 9th Century B.C.  Am. Compl. (Dkt. 89) ¶ 9.  Wei Su and Hai Juan Wang (Su's agent) (collectively "Su") and Yeh Yao Hwang ("Yeh") have both claimed ownership of the Vessel, which had been consigned by Su to Sotheby's for auction.  *See* Sotheby's Answer and Counterclaim (Dkt. 101) at 9–11.  Yeh has filed a cross-claim against Su for conversion.  *See* Yeh Answer and Cross-Claims (Dkt. 104) at 7.  Su filed a motion for judgment on the pleadings, asserting that Yeh's conversion claim is time-barred by New York's three-year statute of limitations.  *See* Su's Motion for Judgment on the Pleadings (Dkt. 108).  The Court denied Su's motion, concluding that a judgment on the pleadings was inappropriate as factual questions raised in the pleadings may be relevant to an equitable estoppel argument.  *See* Order (Dkt. 149) at 9–10.  Su then filed a motion for summary judgment, again contending that Yeh's conversion claim is time-barred and that no triable issues of material fact exist with respect to Yeh's estoppel argument.  *See* Su Mem. of Law (Dkt. 156-2) at 2.  For the reasons discussed below, Su's motion for summary judgement is DENIED.

## BACKGROUND

In August 2014, Su, acting through his agent Wang, consigned the Vessel to Sotheby's for auction.  *See* Sotheby's Answer and Counterclaim (Dkt. 101) at 11; Su Decl. (Dkt. 156-3) ¶ 5.  On or about September 3, 2014, Yeh contacted Sotheby's to claim an ownership interest in the Vessel.  *See* Sotheby's Answer and Counterclaim (Dkt. 101) at 12; Yeh Letter to Sotheby's (Dkt. 170-5).  Sotheby's withdrew the Vessel from auction and retained possession pending

determination of the Vessel's true owner.  *See* Sotheby's Answer and Counterclaim (Dkt. 101) at 12-13; Su Decl. (Dkt. 156-3) ¶¶ 8–9.

On June 17, 2017, Su commenced an action against Sotheby's for breach of contract and replevin to regain possession of the Vessel.  Compl. (Dkt. 1) at 1.  Sotheby's counterclaimed with an interpleader action against Su and Yeh so that their conflicting ownership claims could be adjudicated.  See Sotheby's Answer and Counterclaim (Dkt. 101) at 9–14.  Sotheby's was later discharged as a disinterested stakeholder, although the Vessel remains in its possession for safekeeping.  Order (Dkt. 112).  After extensive efforts to effect service, Yeh eventually learned of the lawsuit and answered the interpleader complaint, asserted a conversion claim against Su, and sought a declaratory judgment about his co-ownership of the Vessel.  *See* Yeh Answer and Cross-Claims (Dkt. 104) at 7–8.

According to Yeh, he has co-owned the Vessel since at least May 22, 2007, when the Shanghai High People's Court determined that Yeh and non-party Zhang Shenbao ("Zhang") were co-owners of the Vessel.  *See* Yeh Decl. (Dkt. 170) ¶¶ 39–41; Shanghai High People's Court Ruling (Dkt. 170-3).  Su, on the other hand, claims that he purchased the Vessel from Zhang in good faith in 2007 with no knowledge of Yeh's interest.  Su Decl. (Dkt. 156-3) ¶ 4.

Su has moved for summary judgment on Yeh's conversion claim, arguing that the claim is time-barred under New York law.

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted)). The Court must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (per curiam) (alterations omitted) (quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 79-80 (2d Cir. 2009)).

### A. Accrual of Yeh's Conversion Claim

"Where jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York choice-of-law rules and statutes of limitations."[1] *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998).  New York applies a three-year statute of limitations to conversion claims.  N.Y. C.P.L.R. § 214(3).  Ordinarily, the three-year period runs from the date of the conversion.  *See Berman v. Goldsmith*, 141 A.D.2d 487, 487 (2d Dep't 1988); *see also In re Rausman*, 50 A.D.3d 909, 910 (2d Dep't 2008).  But when a good faith purchaser is involved, New York follows the demand and refusal rule, pursuant to which the statute of limitations runs from the time the true owner demands return of the property and the bona fide purchaser refuses to return it.  *See Solomon R. Guggenheim Found. v. Lubell*, 77 N.Y.2d 311, 317–18 (1991); *Kamienska v. Westchester Cty.*, 241 N.Y.S.2d 814, 818 (Co. Ct. 1963).

The parties dispute whether Su is a bona fide purchaser of the Vessel.  If Su is a bona fide purchaser,[2] then the statute of limitations would run from 2014, when Sotheby's told Su that

---

[1]     Subject-matter jurisdiction in this case is predicated on diversity jurisdiction.  *See Wei Su v. Sotheby's, Inc.*, 17-CV-4577 (VEC), 2019 WL 4917609, at *2, n.1 (S.D.N.Y. Oct. 4, 2019).

[2]     According to Su, Chinese law dictates that a person in possession of property is deemed to be the owner. Su contends that he is a bona fide purchaser of the Vessel because Zhang had possession at the time of purchase in 2007.  *See* Su Decl. (Dkt. 156-3) ¶¶ 3–4; Su Mem. of Law (Dkt. 156-2) at 4–5.

Yeh claimed an ownership interest in the Vessel and Su rejected the claim.  *See* Sotheby's Letter
to Su (Dkt. 170-8) at 2.  Under that scenario, to avoid being time-barred, Yeh would have had to
file his conversion claim by 2017.  On the other hand, if Su is not a bona fide purchaser,[3] then
the statute of limitations runs from the date of conversion, which in this case was when Su
purchased the Vessel from Zhang in 2007.[4]

Regardless of whom is correct relative to the accrual date, Yeh filed his conversion action
on May 24, 2019, Dkt. 104, which is beyond the statute of limitations under either scenario.  Yeh
argues, however, that the doctrine of equitable estoppel should prevent Su from asserting a
statute of limitations defense.  Because there are clear questions of fact whether Su is equitably
estopped from asserting a statute of limitations defense, the motion for summary judgment must
be denied.

**B.  Equitable Estoppel**

"Equitable estoppel will preclude a defendant from using the statute of limitations as a
defense where it is the defendant's affirmative wrongdoing which produced the long delay
between the accrual of the cause of action and the institution of the legal proceeding."  *Putter v.
North Shore Univ. Hosp.*, 7 N.Y.3d 548, 552 (2006) (citations omitted); *see also Abbas v. Dixon*,
480 F.3d 636, 642 (2d Cir. 2007) (citations omitted) ("Under New York law, the doctrines of

---

[3]     According to Yeh, Su is not a bona fide purchaser because he bought the Vessel from Zhang without Yeh's
consent, knowing that Yeh had an ownership interest.  Yeh's Answer and Cross-Claims (Dkt. 104) at ¶¶ 17–20, 24,
28.

[4]     Yeh also argues that the conversion claim may not have accrued until November 13, 2018, when he made a
direct demand on Su by emailing Su's counsel. Dkt. 172-1, ¶ 11.  Were Yeh's conversion action to have accrued in
2018, then his May 2019 action would clearly be timely.  But "the purpose behind the demand-and-refusal rule . . .
is to give an innocent purchaser the opportunity to turn over chattel in his possession after learning that it had been
stolen from someone else."  *Grosz v. Museum of Modern Art*, 772 F. Supp. 2d 473, 484 (S.D.N.Y.), *aff'd*, 403 F.
App'x 575 (2d Cir. 2010).  There is no dispute that Su has been aware of Yeh's claim to ownership since at least
2014, when Sotheby's informed Su of Yeh's demand and Su refused it.  *See* Sotheby's Letter to Su (Dkt. 170-8), at
2.  Therefore, if Su were to be considered a bona fide purchaser, the action would have accrued in 2014 at the time
of the initial demand and refusal.

equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.").

To prevail with an equitable estoppel argument, the plaintiff must articulate particular acts by the defendant that prevented the timely filing of an action. *See Abbas*, 480 F.3d at 642; *see also Bielecki v. Bielecki*, 106 A.D.3d 1454, 1455 (4th Dep't 2013) (requiring "affirmative misrepresentations"); *Duberstein v. Nat'l Med. Health Card Sys., Inc.*, 829 N.Y.S.2d 95, 95 (1st Dep't 2007) (requiring "affirmative conduct").  Concealment that is either "careful" or "intentional" may satisfy this requirement.  *See Smith v. Cutson*, 188 A.D.2d 1034, 1034 (1992), *abrogated on other grounds*, *Buran v. Coupal*, 87 N.Y.2d 173 (1995) (reversing a finding of equitable estoppel upon finding no evidence of "intentional concealment" by defendant); *Gen. Stencils, Inc. v. Chiappa*, 18 N.Y.2d 125, 128 (1966) (finding equitable estoppel may apply to affirmative wrongdoing that is "carefully concealed").

Courts have found that a defendant may be equitably estopped from asserting a statute of limitations defense when he is engaged in a concealment scheme to hide his involvement or identity in particular wrongdoing.  In *Farkas v. Farkas*, for example, the Second Circuit found that intentional acts of concealment can be the basis for a claim of equitable estoppel under New York law.  168 F.3d 638 (1999).  In *Farkas*, Arlene sued her former mother-in-law, Ruth, after Ruth devised and implemented "a scheme to convert and conceal" artwork in which Arlene had an ownership interest.  *Id.* at 642.  Specifically, Ruth sold artwork that was co-owned by Arlene and her former husband, Bruce.  Ruth then "lent" the proceeds of the sales to her son Bruce, making it appear to Arlene that the proceeds were being used for the couple's joint personal or

legitimate business expenses.[5]  *Id.* at 642–43.  The Second Circuit vacated the district court's

judgment insofar as it denied Arlene's equitable estoppel claim, as this "charade of loans" meant

that Arlene was not "in a position to take steps to protect her interest in the artwork."  *Id.* at 643–

44.

Similarly, in *Markel Am. Ins. Co. v. Grimaldi*, defendants stole a boat and then carried

out "a fairly sophisticated scheme" to prevent plaintiff and others from discovering the identity

of the perpetrators.  No. 10-CV-5447, 2012 WL 1020424, at *1, *5 (E.D.N.Y. Feb. 10, 2012),

*report and recommendation adopted*, No. 10-CV-5447, 2012 WL 1020409 (E.D.N.Y. Mar. 26,

2012).  Such acts included transferring the boat 1,500 miles from the site of the theft,

disassembling the boat, and crushing the boat's hull to obscure identification numbers.  *Id.* at *4.

The Court found that "such actions, all intended to conceal the defendants' participation in the

conversion by rendering the spoils untraceable, bear significantly on the question of equitable

estoppel."  *Id.*

To prevail with an equitable estoppel argument, in addition to proving affirmative acts of

concealment by the defendant, the plaintiff must meet the due diligence requirement.

Specifically, the action must be brought within reasonable time after the facts giving rise to

estoppel have ceased.  *Prevost v. Hartman*, 103 A.D.2d 842, 843 (2d Dep't 1984) (citation

omitted); *see also Golden Budha Corp. v. Canadian Land Co.*, 931 F.2d 196, 200 (2d Cir. 1991)

("The plaintiff is said to bear the burden of establishing that the action has been brought within a

reasonable time after the facts forming the basis for the estoppel no longer are operational."

---

[5]     It appears that this rather convoluted scheme was designed with an eye towards Arlene and Bruce's
inevitable divorce.  At the time the art was being sold, Bruce was in a bigamous marriage with children, a situation
of which his mother was aware.  By funneling the art proceeds to Ruth and then having Ruth "lend" them to Bruce,
Arlene would have had no claim to the funds in a divorce proceeding because the funds belonged to Ruth.  168 F.3d
at 643.

(citation omitted)).  The outer limit is the "statute of limitations measured from the date when the facts giving rise to the estoppel have ceased to be operational." *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 443 (S.D.N.Y. 2014), *aff'd*, 579 F. App'x 7 (2d Cir. 2014) (collecting cases).

### C.  Questions of Fact Exist Whether Su and Wang Engaged in Affirmative Acts of Concealment

When the facts are construed in the light most favorable to Yeh, the non-moving party, Su cannot demonstrate that there is no genuine dispute of material fact with respect to Yeh's equitable estoppel argument.

Yeh alleges that from at least 2007 to 2014, Su and Wang took several affirmative acts as part of a larger concealment scheme.  First, Yeh alleges that Su and Wang stripped the Vessel of its identifying origins by transporting it between Hong Kong and Shanghai to create false customs declarations forms.  *See* Yeh Mem. of Law (Dkt. 171) at 16.  Yeh argues that without these trips Su would not have been able to remove the Vessel from China as Yeh was still in possession of the original declaration form.  *Id.* at 19; Yeh Letter to Sotheby's (Dkt. 170-5) at 1–2.  Su and Wang admit to these roundtrips.  *See* Su Tr. (Dkt. 173-4) at 64:24-25, 65:2-5, 68, 77, 114, 115 (stating that Su saw the Vessel in Hong Kong, implying that it had been taken from Shanghai to Hong Kong); Wang Tr. (Dkt. 173-5) at 56, 69:20-25, 70, 71:2-15, 72–80 (describing Wang's roundtrip with the Vessel between Hong Kong and Shanghai and the various customs forms involved).  While this evidence may not be sufficient to prove deceit at trial, it is some evidence of skullduggery that can support Yeh's claim of active concealment.

Second, Yeh claims that a statement allegedly signed on October 30, 2014, by Zhang as proof of Su's ownership of the Vessel is "suspect on its face" and conceals the true ownership of the Vessel.  *See* Yeh Mem. of Law (Dkt. 171) at 17.  Sotheby's also found the statement suspect

as it contained no contact information for Zhang and was sent to Sotheby's by Wang, not by Zhang. *See* Yeh Mem. of Law (Dkt. 171) at 17–18 (citing Sotheby's Reply Mem. of Law (Dkt. 44) at 5). Su and Wang do not address these points in their summary judgment motion or reply brief. A genuine issue of material fact remains whether Zhang is the true author of this statement and whether Su knowingly used a falsified document to further conceal the alleged conversion.

Finally, Yeh alleges that Chongyuan Art Auction Company ("Chongyuan"), a Shanghai auction house that had initially tried to auction the Vessel in late 2005 and early 2006, collaborated with Su to further an elaborate concealment scheme. *See* Yeh Mem. of Law (Dkt. 171) at 20; Yeh Decl. (Dkt. 170) ¶¶ 33–34. After Chongyuan failed to sell the Vessel at auction, both Yeh and Zhang made competing claims to the Vessel. *See* Yeh Decl. (Dkt. 170) ¶ 35. In an action with stark similarities to the present lawsuit, Chongyuan refused to return the Vessel and Zhang and Yeh were forced to litigate their competing claims in Shanghai. *Id.* ¶¶ 36–39. The resulting judgment clearly states that Zhang and Yeh are each 50% co-owners of the Vessel. *See* Judgment of Shanghai Higher People's Court (Dkt. 104-1) at 7. Given Chongyuan's role in the initial Shanghai lawsuit, it presumably was aware of Yeh's ownership interest in the Vessel. Despite this apparent knowledge, Yeh contends that Chongyuan was involved in the alleged conversion, as three individuals associated with Chongyuan, including Defendant Wang, were set to receive commissions from Sotheby's upon a successful auction. *See* Yeh Mem. of Law (Dkt. 171) at 20.

Wang acknowledged her role as well as the role of two other individuals associated with Chongyuan in the consignment of the Vessel to Sotheby's. *See* Wang Tr. (Dkt. 173-5) at 10:18-22, 11–13 (noting that Defendant Wang herself is a legal representative and shareholder at Chongyuan and that Chong Jian Ji and Ya Ying Tian are also officers and shareholders at

Chongyuan); Sotheby's July 22, 2014 Consignment Agreement (Dkt. 16-1) at 1 (authorizing

Sotheby's to pay Chong Jian Ji an introductory commission); Sotheby's Aug. 4, 2014

Consignment Agreement (Dkt. 173-1) at 1 (authorizing Sotheby's to pay Ya Ying Tian an

introductory commission).  Although Wang admits being involved in the consignment, she

disputes being involved in a concealment scheme, claiming that she did not know of Zhang when

she approached Sotheby's and that she worked with Sotheby's in her personal capacity and not

as a representative of Chongyuan.  Wang Tr. (Dkt. 173-5) at 47:25, 48:1-3, 53:5-9.  While

Chongyuan's role in furthering Su and Wang's alleged concealment scheme (and in the alleged

conversion itself) remains far from proven, when the facts, including that Chongyuan did not

respond to Yeh's requests for information about the Vessel, Yeh Decl. (Dkt. 170) ¶¶ 46, 57, are

evaluated in the light most favorable to Yeh, there are questions of fact whether Chongyuan was

part of a scheme to conceal Zhang's conversion.

        In addition to Su's alleged concealment scheme from 2007 to 2014, Yeh also alleges that

Su and Wang took a series of affirmative acts to conceal their identities from 2014 to 2019,

making it impossible for Yeh to bring a lawsuit against them, thereby justifying estoppel. First, it

is undisputed that Su would not permit Sotheby's to share his identity with Yeh, despite the fact

that Yeh's competing ownership claim was the reason Sotheby's pulled the Vessel from auction

and refused to return it to Su.  *See* Sotheby's Sept. 26, 2014 Letter to Su (Dkt. 170-7); Sotheby's

Oct. 23, 2014 Letter to Su (Dkt. 170-8); Su Tr. (Dkt. 173-4) at 175.

        Second, inexplicably, Su did not include Yeh in a 2015 quiet title action he brought

against Zhang in the Henan Luoyang Intermediate People's Court in China ("Henan Action"),

even though a reasonable person could conclude that Yeh's claim of ownership was what

motivated the action to be brought in the first place.  Yeh Mem. of Law (Dkt. 171) at 19; Henan

Judgment (Dkt. 21-4).  Su also never informed Sotheby's about the Henan Action, so it too was

unable to notify Yeh of the action.  Sotheby's Reply Mem. of Law (Dkt. 44) at 4.  Su explains

that he sued only Zhang and not Yeh because his ultimate objective was "to establish that Su

took free of any claims of Zhang."  Su Mem. of Law (Dkt. 156-2) at 8.  That makes little sense

as Zhang was not the barrier to Sotheby's returning the Vessel to Su.  Construing the facts in the

light most favorable to Yeh, a reasonable jury could find that Su's failure to name Yeh in the

Henan Action or to inform Sotheby's of the action constitutes an affirmative act of concealment

supporting Yeh's equitable estoppel argument.

Third, Su and Wang did not name Yeh as a defendant when they brought this action in

June 2017.  *See* Compl. (Dkt. 1).  In fact, Su's Complaint does not even mention Yeh.  *Id.*  Su

contends that he did not name Yeh because Yeh was not claiming a right to possession and Yeh

had not pursued any claims in China.  Su Mem. of Law (Dkt. 156-2) at 8; *see also id.* at 13.

While a finder of fact could credit that explanation, it could also roundly reject it.  Inasmuch as it

was Yeh's claim to ownership that led to Sotheby's refusal to return the Vessel, necessitating a

lawsuit to recover possession, it is beyond suspicious that Su did not name Yeh when he brought

this lawsuit.  In short, whether Su's decision not to include Yeh in this lawsuit constituted an act

of concealment is a question of fact to be determined at trial.

Next, Yeh contends that Su's attorney, Xuejie Wong, ignored Yeh's email, allegedly sent

on November 13, 2018, claiming co-ownership of the Vessel and offering to negotiate a

settlement.  Yeh Mem. of Law (Dkt. 171) at 3; Email to Wong (Dkt. 170-11).  Su and Wang did

not address this alleged email in their summary judgment motion or reply brief.  Wong's alleged

failure to reply is especially significant because the parties reported to the Court during this same

period that they had been unable to locate Yeh for service of process.  Joint Letter (Dkt. 53) at 2.

Questions of fact remain about Wong's failure to respond to Yeh's email and her failure to alert the Court to the communication.  A trial is necessary to determine whether Wong in fact failed to respond to Yeh's email.  If so, a jury could easily find that to be yet another affirmative act of concealment that supports Yeh's equitable estoppel argument.[6]

Without seriously disputing the facts marshalled by Yeh, Su argues that they are insufficient for an equitable estoppel claim as "[i]t is not enough that plaintiffs alleged defendants were aware of the [wrong] and remained silent about it."  Su Mem. of Law (Dkt. 156-2) at 1 (citing *Zumpano v. Quinn*, 6 N.Y.3d 666, 674 (2006)).  But the case on which Su relies, *Zumpano*, is inapposite.  First, Yeh is not alleging that Su and Wang just "remained silent."  Yeh claims Su and Wang took strategic steps to conceal their identities.[7]  Second, *Zumpano* found that equitable estoppel did not apply to its facts because each plaintiff was aware of the identity of the alleged perpetrators and "[s]ubsequent conduct … did not appear in any way to alter plaintiffs' early awareness of the essential facts and circumstances underlying their causes of action or their ability to timely bring their claims."  *Zumpano*, 6 N.Y.3d at 674.  Unlike in *Zumpano*, Yeh claims that Su and Wang's actions ensured that he remained unaware of who they were, making it impossible to bring a lawsuit against them.[8]  While Su is right that a "wrongdoer is not legally obliged to make a public confession, or to alert people who may have claims

---

[6]     Counsel for Su is warned that this issue could create a serious professional responsibility issue if this case proceeds to trial.  *See* N.Y. R. Prof'l Conduct 3.7.

[7]     Su also argues that parties are only required to actively disclose their wrongdoing when they are in a fiduciary relationship with potential plaintiffs.  Su Reply (Dkt. 174) at 5–6.  But, again, Yeh's argument is not that Su and Wang remained silent; instead, Yeh argues that Su and Wang took specific actions to conceal their identities.

[8]     Su argues that Yeh knew his name in November 2014 and therefore had all the information he needed to file suit.  Su Reply (Dkt. 174) at 8-9.  But a jury could easily reject that argument.  In November 2014, Yeh had a name (Su Wei) but no further identifying information.  Without further identifying information, service of process would have been difficult.

against it," Yeh has evidence that Su and Wang took steps to actively conceal their identities.  *Id.* at 675.

### D.  Questions of Fact Exist Whether Yeh Exercised Due Diligence

Su is also unable to demonstrate that there are no disputes of material fact with respect to whether Yeh exercised due diligence once he became aware of the conversion.  To prevail on a claim of equitable estoppel, Yeh must not only to demonstrate that Su took affirmative acts of concealment, he must also show that his "action was brought within reasonable time after facts giving rise to estoppel had ceased." *Prevost*, 103 A.D. at 843.  Considering the facts in Yeh's favor as the Court must, material questions of fact exist on this issue.

Su argues that any conditions for estoppel concluded in 2014 when Yeh learned from Sotheby's that Su was the consignor.  Su Mem. of Law (Dkt. 156-2) at 10.  To make this argument, Su relies on a letter that Yeh sent to Sotheby's on November 7, 2014, in which Yeh notes that communication he received from Sotheby's indicates that the consignor "appears to be Mr. Su Wei." Yeh's Nov. 14, 2014 Letter to Sotheby's (Dkt. 156-5) at 2.  But Yeh argues that this did not bring an end to the estoppel conditions; he still lacked contact information for Su and knew nothing about Wang (who was actually the consignor).  Yeh Decl. (Dkt. 170) ¶¶ 4, 68, 72. Additionally, Yeh alleges that he was still under the impression that Zhang was the consignor and thought that Su might have been a straw person acting on Zhang's behalf.  *Id.* at ¶¶ 59, 70, 72.  Yeh's initial correspondence with Sotheby's appears to confirms this misimpression. *See* Yeh Letter to Sotheby's (Dkt. 170-5) at 1 ("This letter is in relation to Mr. Zhang Shenbao's appointment of Sotheby New York Headquarters …").

Yeh contends that the estoppel conditions did not conclude until March 2019 when "Defendants' identities were revealed including a means to contact them was known."  Yeh

Mem. of Law (Dkt. 171) at 22–23.  Yeh argues that he became aware of this lawsuit when a friend saw a notice that had been published in a local Taiwanese newspaper.  Yeh Decl. (Dkt. 170) ¶ 74.  Upon learning of the lawsuit, he contacted Wong, Su and Wang's attorney, and when she failed to respond, he contacted Sotheby's attorneys.  *Id.* at ¶¶ 75–85.  It was only when Sotheby's attorney responded to Yeh's email in March 2019 that Yeh became aware of the identities of various parties and their roles in the alleged conversion and consignment.  Yeh Mem. of Law (Dkt. 171) at 3–4.  Yeh further contends that he then exercised due diligence in filing his conversion claim, as he quickly retained counsel and filed his claim.  *Id.* at 22–23. Who became aware of what when is in clear dispute, further demonstrating that summary judgment is improper.

### E.  Su's Procedural Arguments Are Not Compelling

Su makes three procedural arguments, which he claims justify summary judgment in his favor. The Court finds that none of them requires finding in his favor.

First, Su argues that Yeh's pleadings and his opposition brief in an earlier motion do not allege sufficient facts to support equitable estoppel which, in turn, "demonstrates that summary judgment should be granted to Plaintiffs."  Su Mem. of Law (Dkt. 156-2) at 9.  But Su confuses the standard at the summary judgment phase with the standard at the motion to dismiss stage. Each of the cases he cites recites the standard for a motion to dismiss and are not relevant to summary judgment.  *See MP v. Davidsohn*, 169 A.D.3d 788, 789–90 (2019) (describing the Plaintiff's burden on a motion to dismiss); *Twersky*, 993 F. Supp. 2d at 443 n.5 (discussing equitable estoppel on a motion to dismiss).[9]  Additionally, in a motion for summary judgment,

---

[9]     Moreover, Su misstates the standard at the initial pleadings stage.  "The pleading requirements in the Federal Rules of Civil Procedure . . . do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses. . . .  Instead, Rule 8 requires a

"matters not appearing on the face of the complaint may be brought to the court's attention." *Golden Budha Corp.*, 931 F.2d at 201.

Su further argues that Yeh's lack of response to this argument means that he has "abandoned any defense that he was not required to plead estoppel, and the Motion should be granted for that reason alone." *See* Su Reply (Dkt. 174) at 2–3. But here too Su misconstrues the caselaw on which he relies. In *Solomatina v. Mikelic*, the Plaintiff did not fail to respond, but instead actively conceded particular causes of action, leading the court to grant summary judgment with respect to those claims for relief. 370 F. Supp. 3d 420, 424 n.1 (S.D.N.Y. 2019). *See also Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003), *order clarified*, No. 01-CV-5750, 2003 WL 21781941 (E.D.N.Y. July 29, 2003) (finding it permissible for courts to grant summary judgment on particular claims for relief that have been abandoned, especially after finding a lack of evidence with respect to those claims). As Su mischaracterizes the law on pleading standards and as Yeh continues to argue that estoppel applies, granting summary judgment on these grounds is not justified.

Second, Su argues that Yeh's deficient Counter 56.1 Statement means that he has admitted most of the facts Su alleges. Su Reply (Dkt. 174) at 2 n.2. Su is correct that Yeh's Counter 56.1 Statement systematically fails to cite to evidence in the record. *See* Yeh's Counter 56.1 Statement (Dkt. 172). Complying with the Court's rules is required. While Courts have discretion to grant summary judgment on this basis, they are not required to do so. Federal Rule of Civil Procedure 56(c)(3) states "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); *see also T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a

---

plaintiff to provide only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Abbas*, 480 F.3d at 640 (citing Fed. R. Civ. P. 8).

Rule 56.1 statement *permits* the court to conclude that the facts asserted in the statement are uncontested and admissible.") (emphasis added).  While Yeh's attorneys contravened these rules, the Court is excusing it here as Yeh's support was readily cited in its other summary judgment filings.[10]

Third, Su moves to strike the declaration of Hugh H. Mo, Yeh's attorney, arguing that the declaration is inadmissible and is an improper means to circumvent the Court's individual practice rule assigning page limits to memoranda of law.  Su's Reply 56.1 Statement (Dkt. 175) at 4–5.  The Court did not rely on the substance of Mo's declaration to find that significant disputes of material fact warrant denial of summary of judgment. As such, Su's motion to strike Mo's Declaration is denied as moot.

## CONCLUSION

For the reasons discussed above, Su's motion for summary judgment is DENIED.  The Clerk of Court is respectfully directed to terminate the pending motion at docket entry 156.

The parties are hereby ordered to appear at a telephone conference on **Friday, October 9, 2020, at 2:00 P.M.** to discuss scheduling a trial.  All parties and any interested members of the public must attend by dialing 1-888-363-4749, using the access code 3121171, and the security code 4577.  All attendees are advised to mute their phones when not speaking and to self-identify each time they speak.

**SO ORDERED.**

**Date:  September 29, 2020**                                      **VALERIE CAPRONI**
**        New York, New York**                                 **United States District Judge**

---

[10]        Counsel is warned, however, that compliance with the rules is not optional.  Counsel is specifically forewarned that failure to adhere to rules for matters like submission of Requests to Charge and a Joint Pretrial Order may be met with sanctions.

16