USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/07/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------------------- X
WEI SU and HAI JUAN WANG,                              :
                                                       :
                            Plaintiffs,                :
                                                       :
              -against-                                :
                                                       :
SOTHEBY'S, INC.,                                       :
                                                       :
                            Defendant.                 :
-------------------------------------------------------------------------- :
SOTHEBY'S, INC.,                                       :
                                                       :
                            Counter-Claimant,          :
                                                       :
              -against-                                :
                                                       :
WEI SU, HAI JUAN WANG, and YEH YAO HWANG,              :
                                                       :
                            Counterclaim-Defendants,   :       17-CV-4577 (VEC)
                                                       :
-------------------------------------------------------------------------- :       OPINION & JUDGMENT
YEH YAO HWANG,                                         :
                                                       :
                            Cross-Claimant,            :
                                                       :
              -against-                                :
                                                       :
WEI SU and HAI JUAN WANG,                              :
                                                       :
                            Cross-Defendants,          :
-------------------------------------------------------------------------- :
WEI SU and HAI JUAN WANG,                              :
                                                       :
                            Cross-Claimants,           :
                                                       :
              -against-                                :
                                                       :
YEH YAO HWANG,                                         :
                                                       :
                            Cross-Defendant.           :
-------------------------------------------------------------------------- X
```

VALERIE CAPRONI, United States District Judge:

Wei Su ("Su"), Su's agent Hai Juan Wang ("Wang"), and Yeh Yao Hwang ("Yeh") dispute the ownership of the Zhou Zha Hu, an ancient Chinese ritual wine vessel (the "Vessel"), which was consigned by Wang to Sotheby's for auction.  After a seven-day bench trial in June 2022, the Court held, *inter alia*, that Su and Wang converted Yeh's fifty percent ownership interest in the Vessel.[1]  Trial Op., Dkt. 278.  On December 2, 2022, the Court held a status conference and ordered supplemental briefing on the issue of remedy.  *Id*. at 42; Order, Dkt. 286. For the following reasons, the Court finds that Yeh and Su each hold a fifty percent undivided ownership interest in the Vessel, including possessory rights, and orders that the Vessel be sold with the net proceeds divided equally between Yeh and Su.

## DISCUSSION

### I.      Su and Yeh Share an Equal and Undivided Ownership in the Vessel

The Court assumes the parties' familiarity with the factual and procedural background of the case, which the Trial Opinion reviewed at length.  As relevant to this opinion, the Court previously held that "Yeh has a fifty percent ownership interest in the Vessel."  Trial Op. at 39. The Court reserved ruling on "whether, under New York law, Zhang [Shenbhao] passed good title to Su with respect to his fifty percent ownership interest or his right to possess the Vessel." *Id*. at 41 n.57.

The Court partly based its finding that Yeh has a fifty percent ownership interest on the Shanghai Judgment.  *Id*. at 12.  The Shanghai Judgment held that Zhang Shenbhao ("Zhang") and Yeh were co-owners of the Vessel and that, while co-owners have a shared "right to possess,

---

[1]      The trial transcripts are found at docket entries 255, 257, 259, 261, 263, 265, and 267.  The transcripts at docket entries 255 and 257 both start at page one.  To differentiate between the two transcripts, the Court has included an "a" when citing the transcript at docket entry 255, and a "b" when citing the transcript at docket entry 257.

use and benefit from the co-owned item," Zhang had the right to possess the Vessel pending sale at the Chongyuan auction.  *Id*.; Shanghai J., Pl. Ex. 4 at 13, 16.

This Court rejected the argument of Su and Wang that the subsequently-issued Henan Judgment extinguished Yeh's ownership interest.  Trial Op. at 15.  Because there was "no evidence that the Henan court was aware of the Shanghai Judgment or its award of co-ownership of the Vessel to Yeh" and because Yeh was not a party to that proceeding, the doctrine of collateral estoppel did not bind Yeh to the judgment.  *Id*.  Accordingly, "the Court decline[d] to assign any weight to the Henan Judgment" on to the question of whether Yeh had an ownership interest.  *Id*.

The Court finds, however, that the doctrine of collateral estoppel precludes Su from relitigating the issue that was litigated in Henan: namely, as between Su and Zhang, who has an ownership interest in the Vessel.  "The fundamental notion of the doctrine of collateral estoppel . . . is that an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the parties or their privies."  *Constantine v. Tchrs. Coll.*, 448 F. App'x 92, 93 (2d Cir. 2011) (quoting *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008)).  To benefit from collateral estoppel, a party must establish four elements: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."  *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (internal quotation omitted).

All four factors are met here.  Su and Zhang fully litigated in the Henan Action the question of whether Zhang conveyed his ownership interest in the Vessel to Su; deciding that

3

question was necessary to the Henan court's determination that Zhang had transferred ownership

of the Vessel to Su.  *See* Stip. Fact 12, Dkt. 226 at 6–7.  The Henan court held that Su holds

superior ownership rights to Zhang, and the parties present no valid reason to revisit that

holding.[2]

  Although the Shanghai Judgment recognized that Zhang had the exclusive right of

possession under an agreement between Yeh and Zhang dated June 2, 2005 (the "2005

Agreement"), there is no evidence that Yeh and Zhang intended that Zhang's right of possession

would persist if the Chongyuan auction were unsuccessful or if Zhang were to abandon his

attempts to auction the Vessel.  The 2005 Agreement noted that the Vessel was entrusted to the

Shanghai Art Auction but, "[p]rior to 2005.11.30, before the auction was completed, the vessel

was to be returned to Zhang Shengbo."  2005 Agreement, Pl. Ex. 3; *see also* Shanghai J., Pl. Ex.

4 at 11 (alternatively translating the 2005 Agreement to state "[t]he artifact will be delivered to

Mr[.] ZHANG Shen Bao before the completion of sale on 30 November 2005 . . . .").

  The Shanghai Judgment permitted Zhang to possess the Vessel "before its successful

sale," while emphasizing the general principle that co-owners have an equal right of possession.

Shanghai J., Pl. Ex. 4 at 13; *see also* Trial Op. at 14.  In short, the Shanghai Judgment and 2005

Agreement granted Zhang a limited right of possession pending the Chongyuan auction.  That

right expired by at least 2007, when Zhang ceased trying to sell the Vessel at the Chongyuan

---

[2]  Yeh argues that Su could not have obtained Zhang's one-half share of the Vessel because Su was not a bona fide purchaser.  Yeh Mem., Dkt. 289 at 7.  To the extent that Zhang failed to raise this argument before the Henan court, however, he would be estopped from doing so now.  *See ATX Debt Fund 1, LLC v. Paul*, No. 19-CV-8540 (JPO), 2023 WL 2585714, at *8 (S.D.N.Y. Mar. 21, 2023) (applying collateral estoppel where defendant raised only arguments that could have been raised in the prior action).

  The Court further notes that awarding Su and Yeh equal ownership in the Vessel is consistent with New York law, which governs Yeh's conversion claim.  Trial Op., Dkt. 278 at 39.  Yeh's argument seems to be that a person who is not a bona fide purchaser for value is essentially a thief.  But that is not accurate.  While it is true that a thief cannot pass good title, *Candela v. Port Motors, Inc*., 208 A.D.2d 486, 486–87 (2d Dep't 1994), Zhang was not a thief as to his undivided half share of the Vessel.

auction and instead sold it to Su without Yeh's knowledge or consent.[3]  Trial Op. at 4.  From that

point, Su and Yeh equally held all rights of ownership, including the right of possession.  As the

Court detailed in the Trial Opinion, Su's and Wang's subsequent conduct interfered with Yeh's

ownership rights, including his right of possession, to his exclusion.[4]  *See, e.g.*, *id.* at 16–19.

Accordingly, at the time of trial, Su and Yeh each held a one-half, undivided interest in,

including equal right to possession of, the Vessel.

## II.     The Vessel Must Be Sold

Because the record is devoid of evidence from which the Court can determine the

Vessel's monetary value, and Su and Yeh cannot cooperate as joint owners, the Court orders the

Vessel to be sold at the fair market value at the time of sale, with the net proceeds divided

equally between Su and Yeh.

### A.  Yeh Introduced No Evidence of the Vessel's Value or His Damages

In cases involving the conversion of an item of fluctuating value, courts generally award

damages based on "the highest market value until the time of trial" on the theory that the

---

[3]      Su and Wang urge the Court to revisit its prior ruling that Yeh owns a one-half share in the Vessel on the grounds that Yeh had no possessory interest in the Vessel.  Su & Wang Mem., Dkt. 290 at 7–8.  As noted *supra*, however, Yeh had a possessory right in the Vessel once Zhang abandoned his attempts to sell the Vessel through Chongyuang.

Similarly, the assertion that Su and Wang did not convert Yeh's share of the Vessel because their attempt to sell the Vessel through Sotheby's failed is a blatant mischaracterization of the applicable law.  It is true that "an innocent purchase from a thief is not conversion" unless, *inter alia*, the innocent purchaser refuses "to surrender possession to the lawful owner."  23 N.Y. Jur. 2d Conversion § 28 (2023).  Su, however, has conceded that he was not an innocent, bona fide purchaser, and both Su and Wang refused to surrender the Vessel to Yeh or share possession of it with Yeh.  Trial Op. at 17, 19.

Finally, with respect to Su's and Wang's conclusory assertion that the Court's prior rulings regarding the statute of limitations are incorrect, the Court has rejected this argument multiple times.  *See, e.g.*, Order, Dkt. 221 at 3 (citing *Wei Su v. Sotheby's Inc.*, 490 F. Supp. 3d 725, 730 (S.D.N.Y. 2020)).

[4]      Su's and Wang's reliance on *Hudson v. Swan*, 83 N.Y. 552 (1881), is misplaced.  *See* Su & Wang Mem. at 6.  While co-owners of chattel generally cannot maintain an action for replevin against each other, they may do so if "the possession of the co-owner results in . . . such a hostile appropriation of it as to exclude, destroy, or ignore the interest of the other tenant therein."  *Gates v. Bowers*, 169 N.Y. 14, 17 (1901) (citing *Hudson*, 83 N.Y. at 552).  In this case, Su and Wang consigned the Vessel to Sotheby's in total derogation of Yeh's interest.

"injured buyer is . . . entitled to the benefit of his bargain."  *Will of Rothko*, 56 A.D.2d 499, 502–

503 (1st Dep't 1977), *aff'd sub nom. Matter of Rothko's Estate*, 43 N.Y.2d 305 (1977).

Although the award need not be based on an exact determination of the converted item's value,

the Court must have a "reasonable basis of computation" and cannot merely speculate.  *Matter of*

*Rothko's Estate*, 43 N.Y.2d at 323.  When courts cannot arrive at a reasonable valuation of a rare

item, however, a forced sale is appropriate.  *See Macklowe v. Macklowe*, 112 N.Y.S.3d 438, at

*20 (Table) (N.Y. Super. Ct. 2018) (ordering the sale of co-owned art that could not be

reasonably valued).

Yeh argues that the record contains multiple valuations of the Vessel.[5]  First, Yeh urges

the Court to use Sotheby's most recent estimate of $3 to $5 million, as reflected in Yeh's and

Sotheby's November 2022 letter.  Yeh Mem. Dkt. 289 at 11; Letter, Dkt. 279.  That letter was

submitted after the close of trial and is not in evidence.

Second, Yeh argues that his own testimony proved the Vessel's value.  Yeh testified that

Su's and Zhang's conversion of the Vessel deprived him of the ability to undertake a

construction project that would have required a $1 million initial investment, and ultimately a $3

million investment.  Tr. 490–92.  Yeh did not testify, however, whether he believed that the sale

of the Vessel would have provided him all or part of the funds needed for the initial investment,

or otherwise explain how he estimated the Vessel's value.  In short, Yeh's testimony offers no

basis on which the Court may value the Vessel.

---

[5]     Yeh does not rely on the Chongyuan valuation, as he argues that Chongyuan "inflate[d] the Vessel's
valuation."  Yeh Mem. at 11.  Even if he did, the Court could not base an award of damages on the Chongyuan
valuation, *see, e.g.*, Pl. Ex. 86 at 2, because the Chongyuan valuation is hearsay, and no one established its
admissibility for the truth of the matter asserted pursuant to Federal Rule of Evidence 803(6).  But even if it were
admissible for its truth, the Court would not credit it, as "various individuals associated with Chongyuan . . .
colluded" to deprive Yeh of his ownership interest.  Trial Op. at 27–28.

Third, Yeh points to Sotheby's valuation in its 2014 Consignment Agreement, which estimated the Vessel's value to be between $2.8 and $3.8 million.  *See* Pl. Ex. 51 at 3.  That document is hearsay to the extent it is being proffered for the truth of the matter asserted (*i.e.*, that experts at Sotheby's estimated that the value of the Vessel at auction is between $2.8 and $3.8 million).  Fed. R. Evid. 802.  The agreement was admitted not for its truth but as proof that an agreement between Wang and Sotheby's existed.  *See Stryker v. HSBC Securities (USA)*, No. 16-CV-9424 (JGK), 2021 WL 5279392, at *1 (S.D.N.Y. Nov. 11, 2021) ("[W]ith respect to documents, it would usually be necessary to find an exception to the rule against hearsay . . . .").  There was no evidence produced at trial that would establish that any exception to the hearsay rule applies to the estimated value of the Vessel contained in that document.

Nor did any representative from Sotheby's testify regarding the estimated value of the Vessel or its method of valuation.  Wang, who conspired with Su to deprive Yeh of the Vessel, stated only that Sotheby's suggested the estimate "based on the market value."[6]  Tr. 73a:15.  Wang did not explain how the market value was determined; asked how the estimate was determined, Wang responded that, based on market value, the Vessel "might also possibly go up more than [$] 3.8 million."  Tr. 73a:13–20.

### B.  The Vessel Must Be Sold

Because the "[C]ourt cannot determine the value of" the Vessel, it must be sold. *Macklowe*, 112 N.Y.S.3d 438 at *20; *see also Capasso v. Capasso*, 129 A.D.2d 267, 275 (1st Dep't 1987) (ordering the sale of a unique marital residence when faced with competing

---

[6]      Even if the Sotheby's Consignment Agreement were admissible to establish that, as of the date of the consignment, Sotheby's estimated the value of the Vessel to be between $2.8 and $3.8 million, which it is not, Wang's trial testimony suggests that Sotheby's estimate may have been influenced, at least in part, by Wang's negotiations.  *See* Tr. 41b:8–9.  Wang testified that she "agree[d]" to Sotheby's valuation estimates "as long as there was a low of [$] 2.8 [million].  The more the better."  *Id*.  Because no one from Sotheby's testified, the Court has no basis for evaluating the significance *vel non* of her specifying the lowest estimated value she would accept.

valuations).  Courts maintain broad discretion in ordering a partition or sale and are guided by highly "flexible . . . equitable principles."  *Chiang v. Chang*, 137 A.D.2d 371, 374 (1st Dep't 1988).

It is black letter law that when two or more persons own property jointly, and one owner is deprived of possession, courts may exercise their equitable power to order "a sale where partition is impracticable . . . ."  *Loker v. Edmans*, 204 A.D. 223, 227 (3d Dep't 1923) (internal quotation omitted) (ordering sale of personal property in a divorce); *see also Chiang*, 137 A.D.2d at 374 (noting that the ability of courts to order a partition or sale of personal property is "uncontrovertedly established in New York").  Because the Vessel is an indivisible artifact, partition is not possible; accordingly, it must be sold.  *See Ferguson v. McLoughlin*, 184 A.D.2d 294, 295 (1st Dep't 1992) (forcing the sale of a building where physical division would "destroy" it).

A forced sale is appropriate where "the status of the parties has been so changed . . . that they cannot mutually enjoy the benefits" of joint ownership.  *Loker*, 204 A.D. at 228; *see also Capasso*, 129 A.D.2d at 276 (collecting cases).  New York courts have long ordered the sale of jointly-owned personal property in the face of ownership disputes or conversion by one owner. For example, in *Shehan v. Mahar*, 17 Hun. 129, 1879 N.Y. App. Div. LEXIS 1 (3d Dep't 1879), the court ordered the sale of a jointly-owned horse that the plaintiff claimed was stolen by the defendant.  In light of Su's and Wang's protracted deception and "elaborate scheme to conceal their conversion of the Vessel," Trial Op. at 21, and the parties' animosity-charged conduct during the course of litigation, it is apparent that there is no path to cooperative co-ownership of the Vessel.[7]

---

[7]     While Su and Wang argue that the Court's decision to determine the issue of possession violates the party presentation principle, *see* Su & Wang Mem. at 1, the question of possession is clearly raised by Sotheby's

8

The Court further notes that a forced sale seems entirely appropriate given both owners' desire to convert their interests in the Vessel to cash. The whole reason this case exists is because Su tried to sell the Vessel at a Sotheby's auction, providing clear evidence of his desire to sell the Vessel. There is also no question that Yeh, though not consulted on the attempted sale at Sotheby's, wants to sell the Vessel. *See* Yeh Mem. at 3 ("The parties have regarded it as an investment vehicle to be monetized."). Indeed, the undisputed evidence from trial shows that he has been trying to sell his interest in the Vessel since at least 2005, when he consigned it for auction at Chongyuan in China. Trial Op. at 3. Because both parties want to sell the Vessel, a forced sale with a division of proceeds is entirely equitable.

The Vessel is to be sold at fair market value, and Su and Yeh are to share the net proceeds of the sale equally. *See Macklowe*, 112 N.Y.S.3d 438 at *20 (splitting the net proceeds of the sale of a co-owned property equally).

### III.   Yeh Is Not Entitled to Additional Damages

Yeh seeks "at least" $2.5 million in compensatory damages, $2.5 million in punitive damages, costs, and pre-judgment interest. Yeh Mem. at 19. For the following reasons, the Court finds that Yeh is not entitled to damages beyond what he recovers from the sale of the Vessel.[8]

#### A.   Yeh Is Not Entitled to Punitive Damages

New York law provides that punitive damages may be recovered for an act of conversion "where the circumstances show that the conversion was accomplished with malice, insult,

---

interpleader. Sotheby's filed an interpleader seeking a determination of whether Su and Wang or Yeh had superior title to the Vessel because it was faced with competing claims. Sotheby's Answer, Dkt. 13 at 8. Because Su and Yeh cannot cooperate as co-owners, merely determining that they each hold an equal ownership interest in the Vessel would not address the concerns raised by Sotheby's interpleader.

[8]     Yeh is also not entitled to damages stemming from a lost investment opportunity following his inability to liquidate his share of the Vessel. In certain circumstances, conversion damages may include lost profits where

reckless and willful disregard for plaintiff's rights, or by other proof evidencing the aggravated

nature of the act." *Villalba v. Houslanger & Assocs., PLLC*, No. 19-CV-4270 (PKC), 2022 WL

900538, at *21 (E.D.N.Y. Mar. 28, 2022) (internal quotation omitted). Yeh, however, made no

demand for punitive damages in his Crossclaim, nor did he timely move to amend his pleading to

demand punitive damages.

Because Su and Wang were deprived of timely notice of a demand for punitive damages,

Yeh cannot seek punitive damages now. *See Crispino v. Greenpoint Mortg. Corp.*, 2 A.D.3d

478, 479 (2d Dep't 2003) (noting that the plaintiff was "not entitled to punitive damages, as she

made no such demand in her complaint"); *Dental Health Assocs. v. Zangeneh*, 34 A.D.3d 622,

625 (2d Dep't 2006) (same); *Belt v. Girgis*, 82 A.D.3d 1028, 1030 (2d Dep't 2011) (same);

*Gravitt v. Newman*, 114 A.D.2d 1000, 1002 (2d Dep't 1985) (same); *Porrini v. McRizz, LLC*,

No. 19-CV-3979 (ARR), 2020 WL 1676101, at *5 n.2 (E.D.N.Y. Apr. 6, 2020) (noting that

while the claimants' conversion claim plausibly pled facts sufficient to warrant punitive

damages, punitive damages were unavailable because claimants had "not specifically demanded

punitive damages in their counterclaims").

The cases on which Yeh relies to argue that punitive damages are available despite his

failure to demand them are inapposite. In limited circumstances, a claimant may proceed on a

---

"they might reasonably be supposed to follow from the conversion." *Rajeev Sindhwani, M.D., PLLC v. Coe Bus. Serv., Inc.*, 52 A.D.3d 674, 676 (2d Dep't 2008) (quoting *Barrington v. Offenbach*, 163 N.Y.S. 423, 426 (1st Dep't 1917)). Even assuming that Zhang, based on his conversations with Yeh regarding the loan, could have reasonably expected that lost profits would flow from his conversion of the Vessel, Yeh introduced no evidence to quantify those damages or to explain why Su and Wang should have reasonably anticipated such damages.

Yeh has also not introduced any evidence regarding the anticipated yield of the putative investment, such as the cost at which the buildings he intended to construct could be rented or sold, the anticipated revenue of the contemplated music hall, or the bid price of other contractors for this project. In short, Yeh has failed to establish that he suffered "actual damages" from this lost investment opportunity because he failed to introduce evidence establishing "a reasonable estimate of the extent of the harm." *Lewin v. Levine*, 146 A.D.3d 768, 769 (2d Dep't 2017).

10

claim for punitive damages at trial without the defendant's consent even if such damages are not explicitly demanded when the detailed factual allegations or the plaintiff's conduct otherwise provide notice, before trial, of a potential claim for punitive damages.  *See Gill v. Montgomery Ward & Co.*, 284 A.D. 36, 40, 43 (3d Dep't 1954) (punitive damages claim were appropriately included in trial because the complaint alleged that the defendant acted "willfully, wrongfully, forcefully, and maliciously" in falsely imprisoning the plaintiff for more than an hour); *see also Mendoza v. City of Rome*, 872 F. Supp. 1110, 1125 (N.D.N.Y. 1994) (noting that an award for punitive damages was appropriate despite the plaintiff's failure to demand punitive damages because "[t]he defendant consented to that issue being tried").

In *Bondi v. Bambrick*, 308 A.D.2d 330 (1st Dep't 2003), for example, the First Department held that the claim for punitive damages was properly tried because the complaint contained detailed descriptions of criminal conduct, including that the defendant "acted recklessly when, while intoxicated, he drove his vehicle over the double yellow line on the roadway and struck plaintiff."  *Id*. at 330.  In contrast Yeh's Crossclaim alleges only, and in a perfunctory manner, that Su and Wang intentionally interfered with his ownership rights.  *See, e.g.*, Crossclaim, Dkt. 104 ¶ 25 ("At the time Wang entered into the Consignment Agreement [with Sotheby's] he was aware that Yeh had an ownership interest in the Property . . . .").  Although Yeh argues that he only learned of "salient" facts supporting his claim for punitive damages at trial, Yeh Mem. at 15, trial is not a means to conduct discovery in aid of unasserted demands for remedy.

Yeh improperly waited to raise the issue of punitive damages until after trial and did so over the objection of the counterparty.  This unreasonable delay precludes him from proceeding with a claim for punitive damages.  *See Licameli v. Roberts*, 277 A.D.2d 1057, 1057 (4th Dep't

2000) (memorandum opinion) (affirming denial of leave to amend complaint to add claim for punitive damages in light of the plaintiff's "lengthy delay" and because "discovery was complete").

At this late juncture, Su and Wang "have been deprived of the opportunity to conduct discovery and establish a defense with respect to this belated damage claim." *Heller v. Louis Provenzano, Inc.*, 303 A.D.2d 20, 23 (1st Dep't 2003) (holding that the plaintiff's "inexcusable and inordinate delay" of six years precluded him from proceeding with a claim for punitive damages before retrial). In order to permit Su and Wang to proffer an adequate defense, the Court would be forced to reopen discovery or retry this matter — seven years after this matter commenced — and unjustifiably increase their litigation costs. The Court is unwilling to do so.[9]

### B. Yeh Is Not Entitled to Prejudgment Interest

N.Y. CPLR § 5001 generally requires the award of prejudgment interest in a conversion case unless the remedy "account[s] not only for the plaintiff's lost assets but for use of those assets during the time between injury and recovery." *ABKCO Music & Records Inc. v. Chimeron LLC*, 517 F. App'x 3, 7 (2d Cir. 2013) (citing *Bamira v. Greenberg*, 295 A.D.2d 206, 207 (1st Dep't 2002)); *see also Will of Rothko*, 56 A.D.2d at 503 (though "the general rule with regard to the measure of damages in conversion is to award the value of the property at the time of conversion . . . where the conversion of an item of fluctuating value is involved, then damages are measured by considering the highest market value within a reasonable time after notice of the conversion" (emphasis omitted)).

Because the Court awards Yeh damages equal to one-half the net proceeds of the sale of the Vessel at its fair market value, the damages award accounts for any appreciation in the value

---

[9]     The Court is unwilling to reopen evidence in this case, but had Yeh put Su and Wang on notice that punitive damages were being sought, he may well have been entitled to such damages given their conduct.

of the Vessel and the loss of use of money during the period of conversion.  An additional award of prejudgment interest "would constitute a windfall double recovery."  *Bamira*, 295 A.D.2d at 208 (declining to award prejudgment interest where the plaintiff was awarded the asset's present value).

### C.  Yeh Is Not Entitled to Attorneys' Fees or Costs

Yeh seeks an award of fees and costs associated with the recovery of the Vessel.  Yeh Mem. at 23.  Pursuant to the American Rule adopted by New York, attorneys' fees and litigation costs are generally not recoverable absent a statutory or contractual provision, but may be recoverable when a party has "acted with disinterested malevolence and . . . intentionally sought to inflict economic injury on another party by forcing him or her to engage counsel."  *Palermo v. Taccone*, 79 A.D.3d 1616, 1619 (4th Dep't 2010) (declining to award fees and costs for the conversion of equipment).

There is no evidence that Su and Wang deliberately "sought to inflict economic injury on [Yeh] by forcing [him] to engage legal counsel."  *United Pickle Co. v. Omanoff*, 63 A.D.2d 892, 892 (1st Dep't 1978) (awarding partial legal fees for defense against lawsuits designed "to harass and oppress").  While Su purchased the Vessel knowing that its "title was cloudy," "more is required than bad faith."  *Reif v. Nagy*, 175 A.D.3d 107, 131 (1st Dep't 2019) (denying attorneys' fees where defendant bought art despite knowing that plaintiffs claimed ownership).

That Su and Wang engaged in a complex conspiracy to deprive Yeh of his ownership interest in the Vessel is also not enough to warrant an award of fees and costs.  *See Palermo*, 79 A.D.3d at 1619 (holding that attorneys' fees were not warranted where the defendant intentionally locked away the plaintiff's property to prevent recovery); *see also Reif*, 175 A.D.3d at 131.  Although their tortious acts may have been malicious, fees and costs are not recoverable

"unless the sole motivation of the malicious acts complained of constituted a disinterested malevolence on the defendant's part." *Green v. Fischbein Olivieri Rozenholc & Badillo*, 119 A.D.2d 345, 351 (1st Dep't 1986) (internal quotation omitted).  The Court cannot conclude that Su and Wang were motivated solely by disinterested malevolence.  Based on the complex legal and factual background of this dispute — including that the Henan Judgment found Su to be the sole owner of the Vessel —  Su made a "business calculation" on the belief, though incorrect, that "title could possibly be successfully defended." *Reif*, 175 A.D.3d at 131.

### IV.     Su's and Wang's Replevin Claim Is Dismissed as Moot

In light of the Court's order to sell the Vessel, and Su's and Wang's statement that "[a]ny need for replevin has been eliminated," the Court dismisses their replevin claim.  Su & Wang Mem. Dkt. 290 at 13 n.11; *see also* Letter, Dkt. 182 at 1–2.

## CONCLUSION

For the foregoing reasons, the Court finds that Su and Yeh each hold an undivided 50% ownership interest in the Vessel and orders the sale of the Vessel, with the net proceeds from the sale distributed equally.  Pending appointment of a receiver pursuant to N.Y. CPLR § 5106, the Vessel is to remain in Sotheby's possession.  The Clerk of Court is respectfully directed to enter judgment in favor of Yeh and against Su and Wang.

Sotheby's motion for fees and costs is DENIED without prejudice to refiling with an updated statement of fees and costs.  *See* Letter, Dkt. 279 at 1 (noting that Sotheby's counsel has continued to participate in discussions with the parties through at least November 2022).  The Clerk of Court is respectfully directed to lift the stay on the motion at Dkt. 122 and to terminate the motion.  The Clerk of Court is further directed to reinstate Sotheby's Inc. as a party in this matter for the limited purpose of the adjudication of Sotheby's motion for attorneys' fees.

Not later than **March 15, 2024**, all parties, including Sotheby's, must meet and confer for at least one hour and submit a joint letter that certifies they have done so and states:

(1) whether the parties have reached a settlement as to Sotheby's motion for fees and costs, and if not, a proposed briefing schedule for Sotheby's renewed motion;[10]

(2) the name of an agreed-upon receiver pursuant to N.Y. CPLR § 5106, or, if no agreement is reached, the name, CV, and proposed fee proposal of each party's proposed receiver; and

(3) the parties' availability for an in-person status conference, if required, preferably on a Friday at 10:00 A.M.

**SO ORDERED.**

Date:   February 7, 2024
        New York, New York

                                                **VALERIE CAPRONI**
                                        **United States District Judge**

---

[10]     To the extent that an appeal is taken in this matter, the Court retains jurisdiction to adjudicate motions for attorneys' fees.  *See Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 225 (2d Cir. 2004) ("[N]otwithstanding a pending appeal, a district court retains residual jurisdiction over collateral maters, including claims for attorneys' fees." (collecting cases)).